506 P.2d 282

**COUNTY OF MARICOPA, a political subdivision of the State of Arizona, et al., Appellants,**

v.

**ANZWOOL, INC., a New York corporation, Appellee.**

**No. 1 CA–CIV 1879.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 22, 1973.

Samuel Kelsall IV, Phoenix, for appellants.

Burch, Cracchiolo, Levie, Guyer & Weyl, by C. Michael Pierce, Phoenix, for appellee.

DONOFRIO, Presiding Judge.

This is an appeal from a judgment in a mandamus action ordering the County of Maricopa to transmit to the County Recorder of said county a subdivision plat of Casa Acoma Estates II for recording, and for the issuance of building permits upon proper application for each of the lots therein.

The appellee corporation is the owner of twenty acres of land lying in Maricopa County which is within three miles of the corporate limits of the City of Phoenix. On December 12, 1970, appellee, pursuant to A.R.S. §§ 9–474 through 9–477, submitted to appellant County Board of Supervisors (Board) for the purpose of approval, its subdivision plat of Casa Acoma Estates

II consisting of 70 single-family lots on this land. The lots met the minimum lot area and width requirements of the R1–8 Zoning[1] District within which it was located.

The record shows a staff report to the Planning and Zoning Commission of the County (Commission) dated January 15, 1971, which found no objections from either the County Highway Department, the County Health Department, the Washington School District or the Flood Control District. This staff report recommended that the plat be approved since it would "subdivide land in conformance with present zoning regulations" and "provide for the extension and widening of existing east-west streets." The deed restrictions were also approved by legal counsel for the County. The City of Phoenix Planning Commission had reviewed the plat and submitted its report to the Board in accordance with A.R.S. § 9–474, subsec. C. The favorableness of this report is not questioned. In the area to the west, the City of Glendale has a zoning district which permits 6000 sq. ft. lots, and no objection appears of record from the City of Glendale.

At this point there was no action by the Board on the plat as the Planning and Zoning Commission as a body had not, as yet, made any recommendation. In the Commission's meeting of January 7, 1971, they had voted to hold action on the plat in abeyance to permit possible determination by them of the rezoning of the area to R1–35.[2] As they put it, this was something that might be recommended to the Board as a result of their consideration of the public hearing they had on that date.

To better understand the case, we believe the following facts set out chronologically are helpful. In November 1970 property owners in a nearby development, Sunburst Farms, were petitioning the County to change the zoning in a large area between Phoenix and Glendale from R1–8 to R1–35. The area was bounded on the north by Bell Road, on the east by 43rd Avenue, on the south by Thunderbird Road and on the west by 51st Avenue. Their petition was presented to the County Planning and Zoning Commission meeting of December 3, 1970. The Commission at that time initiated the change of zoning and scheduled the matter for a public hearing. At the hearing, which was set for January 7, 1971, The Commission heard lengthy pro and con arguments from interested property owners in the area. It is to be noted that reference was made, in the early stages of this hearing, to the recording of a plat of the Casa Acoma Estates II subdivision on December 31, 1970. The attorney representing Sunburst Farms, and who appeared at the hearing at that time, mentioned that the filing of the unapproved plat within three miles of a city such as Phoenix was void. The chairman then announced that the recordation of the plat was a nullity. We agree with this conclusion as the filing and recordation was premature under the circumstances. It might be added at this point that we have attached no significance to this recordation in this opinion.

At the conclusion of the hearing of January 7, the Commission held the matter of rezoning in abeyance until their next regular meeting of January 21, 1971, to permit, as they stated it, "possible determination of the area that might be recommended" for the new zoning.

On January 21, 1971, the Commission resumed their public hearing in the matter of rezoning to R1–35 and heard additional statements on both sides of the question. It does not appear that appellee participated in any of these discussions. At the conclusion of the hearing the Commission decided upon the area that was to be rezoned to R1–35 which would be recommended to the Board for its approval. The area included the land covered by the Casa Acoma Estates II plat.

At their February 4, 1971 meeting the Commission delayed taking any action on Casa Acoma Estates II plat, but at their

---

1. R1–8 zoning refers to one residential house per 8000 sq. ft.

2. R1–35 zoning refers to one residential house per 35,000 sq. ft.

February 18, 1971 meeting they recommended approval of the Casa Acoma Estates II plat.

On February 22, 1971, the Board granted, with certain exceptions, zoning of the area to R1–35 which included the Casa Acoma Estates II property.

At the Board's meeting of May 24, 1971, the matter of the Casa Acoma Estates II subdivision was up again and at that time was taken under advisement because the Board was not sure it should act because of other pending litigation [3] regarding its zoning, and at its June 1, 1971 meeting the Board considered the matter and denied approval of the subdivision plat.

The instant mandamus action was filed following the June 1, 1971 denial of approval by the Board.

The question presented for our determination is whether the Board should have approved and endorsed its approval upon the plat and transmitted it to the County Recorder for filing as provided by A.R.S. § 9–475, or whether the Board could hold in abeyance its approval until after it had passed upon a rezoning of the area and then deny approval for the reason that the plat did not conform to the new zoning.

We hold that the plat, having been found to conform to all the legal requirements when it was submitted to the Board, should have been approved by the Board and transmitted to the recorder for filing.

Appellee submitted its plat pursuant to the applicable statutes, A.R.S. §§ 9–474 through 9–477. A.R.S. § 9–475 provides:

"A. One copy of the plat or map shall be filed with the city or town and the other copy with the board of supervisors of the county in which the subdivision is situated, to which shall be attached the petition of the owner praying for the approval of the plat or map.

"B. The board of supervisors shall set the petition for hearing not less than fifteen and not more than thirty days from the date of the filing of the plat or map and petition with the board, and shall cause written notice thereof to be given to the governing body of the city or town. The city or town may appear at the hearing and show cause why the petition should not be granted. Upon the hearing, if it appears to the board that the plat or map reasonably conforms to legal requirements it *shall* approve and endorse the approval upon the plat or map and transmit it to the county recorder of the county for filing." (emphasis added)

This section is clear in stating that a hearing is to be had before the specified period, and if it appears to the Board that the plat reasonably conforms to the legal requirements, it shall approve and endorse its approval upon the plat and transmit it to the recorder for filing. It is not questioned that the map met all the legal requirements prior to January 11, 1971, when the Planning and Zoning Commission began to hold in abeyance their approval of the plat.

Bearing in mind that zoning ordinances are to be strictly construed, Euclid v. Ambler Realty, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016 (1926); Kubby v. Hammond, 68 Ariz. 17, 198 P.2d 134 (1948), we believe the case of Robinson v. Lintz, 101 Ariz. 448, 420 P.2d 923 (1966), is decisive of the question. In that case the county and the city procrastinated on a subdivision plat, attempting to effect rezoning before they would permit recordation of the plat which conformed to the zoning which existed at the time that plat was submitted. Our Supreme Court stated:

"The shocking consequences of a finding that the Board possessed such un-

---

**3.** The other pending litigation is Maricopa County v. Bell 51st Investors (Superior Court No. C–245519); (On appeal, 1 CA–CIV 1747). Appellee is not a party to this action, nor is the action of any significance to the instant case.

shackled authority is well illustrated by the facts of the present case. Here the Board held action on the plaintiff's submitted subdivision plan in abeyance pending future consideration of a proposed zoning change despite the fact that the plan complied completely with the zoning ordinance then in existence. Nearly four months passed between the time that the subdivision plan was presented to the Board and the time that the Board finally made a decision on the proposed zoning change. If the Board is deemed to have authority to detain development of one's land for this length of time what is to prevent it from holding a landowner in absolute limbo for a year or two while the landowner pays taxes, pays interest on normally large loans for proposed developments, and watches contemplated benefit from his original investment and subdivision program dissolve into nothingness." 101 Ariz. at 451, 420 P.2d at 926.

'Apropos to having the Board act on the zoning as it existed when the appellee prepared and presented for approval its plat to the Board is the following from the Robinson case:

"A basic sense of justice and a security of one's rights in property require that at some definite point in time a property owner should know how he may subdivide his property. An acknowledgement of recording as establishing a right to act upon subdivision plans complying with zoning regulations then in existence provides this invaluable certainty. It also takes into account principles of equity, as it is at the point of recording that the subdivider has necessarily incurred the expense of numerous surveying and legal fees in reliance on the ordinance then in effect. Under the circumstances, we believe that any other standard for determining a lot to be 'legally established' would be impractical and arbitrary." 101 Ariz. at 452, 420 P.2d at 927.

In the instant case the plat was presented to the Board on December 12, 1970. As it turned out, after the city and county departments looked into the matter, the plat met with and conformed to all the legal requirements of the existing zoning and with all of the plans of the city with reference to streets, alleys and other prescribed uses, and unquestionably within the time limits spelled out for such matters in A.R.S. § 9–475, supra.

Under such circumstances, the Board was by A.R.S. § 9–474 et seq., mandated to approve such plat at its hearing. Failing to do so, the instant action and judgment was proper. Robinson, supra.

Affirmed.

STEVENS and JACOBSON, JJ., concurring.